# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SCHOENECKERS, INC. d/b/a BI WORLDWIDE, | ) ) ) |
| Plaintiff, | ) ) ) C.A. No. |
| v. | ) ) |
| EPSILON DATA MANAGEMENT, LLC, | ) ) **JURY TRIAL DEMANDED** |
| Defendant. | ) ) |

## COMPLAINT FOR PATENT INFRINGEMENT

This is a complaint for infringement of U.S. Patent No. 8,768,764 ("the '764 patent"), U.S. Patent No. 9,779,421 ("the '421 patent"), and U.S. Patent No. 11,501,339 ("the '339 patent") (collectively, "the patents-in-suit"). Plaintiff Schoeneckers, Inc. ("BI Worldwide") brings this action against Defendant Epsilon Data Management, LLC ("Epsilon" or "Defendant") and states as follows.

## Parties

1. BI Worldwide is a Minnesota corporation having a principal place of business at 7630 Bush Lake Rd, Edina, MN, 55439.

2. On information and belief, Epsilon is a Delaware corporation with its principal place of business at 6021 Connection Drive Irving, TX 75039. Epsilon conducts business, either directly or through its agents, on an ongoing basis in this judicial district and elsewhere in the United States and has a regular and established place of business in this judicial district, as discussed below.

## JURISDICTION AND VENUE

3. This action arises under the Patent Act, 35 U.S.C. §§ 271, 281, and 284-285, among others.

4. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338.

5. This Court has personal jurisdiction over Epsilon because Epsilon is a corporation incorporated and existing under Delaware law.

6. This Court also has personal jurisdiction over Epsilon because, upon information and belief, Epsilon committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District. Upon information and belief, Epsilon also has substantial, systematic, and continuous contacts with Delaware; has established distribution channels for its products and services in Delaware; regularly and continuously conducts business in Delaware, including by selling its products and services in Delaware, either directly or indirectly through its subsidiaries, agents, or affiliates; has purposefully availed itself of the privilege of doing business in Delaware; and derives substantial revenue from the sale of its products and services in Delaware. Epsilon, directly, has purposefully and voluntarily placed infringing products and services into this District and into the stream of commerce with the intention and expectation that the infringing products and services will be purchased for use in this District.

7. Epsilon provides a gamification platform, including Epsilon PeopleCloud, to customers throughout the United States, which is accessible in and used by consumers in this District through its website in an infringing manner, as detailed throughout this complaint. On information and belief, infringing activities occur in this District as a result thereof.

8. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and/or 1400(b) because, among other reasons, Epsilon is incorporated under the laws of the State of Delaware and therefore resides in this judicial district.

**BI Worldwide's Patented Technology and Epsilon's Infringing Product**

9. BI Worldwide is the owner of the patents-in-suit. These patents are included herewith as Exhibit A, B and C, respectively.

10. These patents arose from research and development into systems and methods for providing incentives to visitors of a website by Bunchball Inc. ("Bunchball"). Bunchball launched the gamification industry in 2007. It recognized that there were two problems with incentives being offered on websites at the time of their invention. First, each website was required to independently develop the incentive software program. Second, incentive software programs were written specifically for the websites and were not easily customizable once written. Therefore, Bunchball developed an incentive application that is portable onto multiple websites and customizable on each site. This research and development resulted in the patents-in-suit.

11. Bunchball also launched its Nitro platform in 2007. This platform uses the technology described in the patents-in-suit. Since then, millions of people have completed more than five billion challenges powered by Bunchball Nitro. This platform has become the leader in enterprise gamification platforms. In 2018, Bunchball was purchased by BI Worldwide. BI Worldwide continues to operate Bunchball and sell the Bunchball Nitro platform.

12. Epsilon uses and sells a platform that incentivizes individuals to use their websites. Epsilon's platform directly competes with the Bunchball Nitro platform and infringes the patents-in-suit. *See* Exs. D-H.

**The Parties' Pre-Suit Correspondence**

13. On May 18, 2023, BI Worldwide sent correspondence to Epsilon, informing it of the '764 patent, the '421 patent, and the '339 patent and advising Epsilon to consult with patent

counsel to examine the patents-in-suit. BI Worldwide also stated its willingness to grant a non-exclusive license under appropriate terms.

14. On May 29, 2024, BI Worldwide sent another correspondence, again informing Epsilon of the patents-in-suit and offering a non-exclusive license under appropriate terms.

15. To date, Epsilon has not responded to BI Worldwide's letters.

16. This correspondence demonstrates BI Worldwide's good faith attempts to resolve this dispute.

## Count 1
### Claim for Patent Infringement of U.S. Patent No. 8,768,764

17. BI Worldwide incorporates by reference each of the paragraphs above as if fully set forth herein.

18. BI Worldwide is the owner of the '764 patent, which issued on July 1, 2014 and is attached as Exhibit A.

19. Epsilon has infringed and continues to infringe one or more claims of the '764 patent, including at least claim 10 under 35 U.S.C. § 271(a) by making, using, offering to sell, selling, and/or importing its platform. Attached as Exhibit I is a claim chart showing an example of how Epsilon's system infringes claim 10 of the '764 patent.

20. The use of Epsilon's system satisfies Element 10[p] of the '764 patent, as shown in Exhibit I.

21. The use of Epsilon's system satisfies Element 10[a] of the '764 patent, as shown in Exhibit I.

22. The use of Epsilon's system satisfies Element 10[b] of the '764 patent, as shown in Exhibit I.

23. The use of Epsilon's system satisfies Element 10[c] of the '764 patent, as shown in Exhibit I.

24. The use of Epsilon's system satisfies Element 10[d] of the '764 patent, as shown in Exhibit I.

25. The use of Epsilon's system satisfies Element 10[e] of the '764 patent, as shown in Exhibit I.

26. The use of Epsilon's system satisfies Element 10[f] of the '764 patent, as shown in Exhibit I.

27. The use of Epsilon's system satisfies Element 10[g] of the '764 patent, as shown in Exhibit I.

28. Epsilon directly infringes, literally and under the doctrine of equivalents, claims of the '764 patent through making, using, selling, offering for sale, and/or importing its platform.

29. Epsilon also indirectly infringes claims of the '764 patent. Epsilon has known its platform was especially made or especially adapted for use in an infringing manner before this complaint was filed. For instance, Epsilon was aware of the '764 patent as early as May 18, 2023, when BI Worldwide sent its initial correspondence. Epsilon actively induces infringement because it directly encourages its customers to use the platform in a way that results in infringement of the '764 patent by selling access to the platform. Epsilon also contributes to infringement because its platform is not a staple article of commerce suitable for substantial non-infringing uses. For example, there is no substantial use for the platform that does not infringe the '764 patent. The intended, normal use of Epsilon's platform results in infringement. Epsilon's platform is a material part of the invention of the '764 patent.

30. Epsilon willfully infringed and continues to willfully infringe the '764 patent.

31. BI Worldwide has satisfied the notice or marking provisions of 35 U.S.C. § 287.

32. Epsilon's infringement of the '764 patent has caused and will continue to cause damage to BI Worldwide unless Epsilon is enjoined from infringing the '764 patent. Epsilon's use of the patent has caused irreparable harm for which there is no adequate remedy at law.

### Count 2
### Claim for Patent Infringement of U.S. Patent No. 9,779,421

33. BI Worldwide incorporates by reference each of the paragraphs above as if fully set forth herein.

34. BI Worldwide is the owner of the '421 patent, which issued on October 3, 2017 and is attached as Exhibit B.

35. Epsilon has infringed and continues to infringe one or more claims of the '421 patent, including at least claim 12 under 35 U.S.C. § 271(a) by making, using, offering to sell, selling, and/or importing its platform. Attached as Exhibit J is a claim chart showing an example of how Epsilon's system infringes claim 12 of the '421 patent.

36. The use of Epsilon's system satisfies Element 12[p] of the '421 patent, as shown in Exhibit J.

37. The use of Epsilon's system satisfies Element 12[a] of the '421 patent, as shown in Exhibit J.

38. The use of Epsilon's system satisfies Element 12[b] of the '421 patent, as shown in Exhibit J.

39. The use of Epsilon's system satisfies Element 12[c] of the '421 patent, as shown in Exhibit J.

40. The use of Epsilon's system satisfies Element 12[d] of the '421 patent, as shown in Exhibit J.

41. The use of Epsilon's system satisfies Element 12[e] of the '421 patent, as shown in Exhibit J.

42. The use of Epsilon's system satisfies Element 12[f] of the '421 patent, as shown in Exhibit J.

43. Epsilon directly infringes, literally and under the doctrine of equivalents, claims of the '421 patent through making, using, selling, offering for sale, and/or importing its platform.

44. Epsilon also indirectly infringes claims of the '421 patent. Epsilon has known its platform was especially made or especially adapted for use in an infringing manner before this complaint was filed. For instance, Epsilon was aware of the '421 patent as early as May 18, 2023, when BI Worldwide sent its initial correspondence. Epsilon actively induces infringement because it directly encourages its customers to use the platform in a way that results in infringement of the '421 patent by selling access to the platform. Epsilon also contributes to infringement because its platform is not a staple article of commerce suitable for substantial non-infringing uses. For example, there is no substantial use for the platform that does not infringe the '421 patent. The intended, normal use of Epsilon's platform results in infringement. Epsilon's platform is a material part of the invention of the '421 patent.

45. Epsilon willfully infringed and continues to willfully infringe the '421 patent.

46. BI Worldwide has satisfied the notice or marking provisions of 35 U.S.C. § 287.

47. Epsilon's infringement of the '421 patent has caused and will continue to cause damage to BI Worldwide unless Epsilon is enjoined from infringing the '421 patent. Epsilon's use of the patent has caused irreparable harm for which there is no adequate remedy at law.

**Count 3**
**Claim for Patent Infringement of U.S. Patent No. 11,501,339**

48. BI Worldwide incorporates by reference each of the paragraphs above as if fully set forth herein.

49. BI Worldwide is the owner of the '339 patent, which issued on November 15, 2022 and is attached as Exhibit C.

50. Epsilon has infringed and continues to infringe one or more claims of the '339 patent, including at least claim 12 under 35 U.S.C. § 271(a) by making, using, offering to sell, selling, and/or importing its platform. Attached as Exhibit K is a claim chart showing an example of how Epsilon's system infringes claim 21 of the '339 patent.

51. The use of Epsilon's system satisfied Element 21[p] of the '339 patent, as shown in Exhibit K.

52. The use of Epsilon's system satisfied Element 21[a] of the '339 patent, as shown in Exhibit K.

53. The use of Epsilon's system satisfied Element 21[b] of the '339 patent, as shown in Exhibit K.

54. The use of Epsilon's system satisfied Element 21[c] of the '339 patent, as shown in Exhibit K.

55. The use of Epsilon's system satisfied Element 21[d] of the '339 patent, as shown in Exhibit K.

56. The use of Epsilon's system satisfied Element 21[e] of the '339 patent, as shown in Exhibit K.

57. The use of Epsilon's system satisfied Element 21[f] of the '339 patent, as shown in Exhibit K.

58. Epsilon directly infringes, literally and under the doctrine of equivalents, claims of the '339 patent through making, using, selling, offering for sale, and/or importing its platform.

59. Epsilon also indirectly infringes claims of the '339 patent. Epsilon has known its platform was especially made or especially adapted for use in an infringing manner before this complaint was filed. For instance, Epsilon was aware of the '339 patent as early as May 18, 2023, when BI Worldwide sent its initial correspondence. Epsilon actively induces infringement because it directly encourages its customers to use the platform in a way that results in infringement of the '339 patent by selling access to the platform. Epsilon also contributes to infringement because its platform is not a staple article of commerce suitable for substantial non-infringing uses. For example, there is no substantial use for the platform that does not infringe the '339 patent. The intended, normal use of Epsilon's platform results in infringement. Epsilon's platform is a material part of the invention of the '339 patent.

60. BI Worldwide has satisfied the notice or marking provisions of 35 U.S.C. § 287.

61. Epsilon's infringement of the '339 patent has caused and will continue to cause damage to BI Worldwide unless Epsilon is enjoined from infringing the '339 patent. Epsilon's use of the patent has caused irreparable harm for which there is no adequate remedy at law.

**Prayer for Relief**

BI Worldwide respectfully requests the following relief:

A. A judgment that Epsilon has infringed the '764 patent, the '421 patent, and the '339 patent;

B. A judgment and order requiring Epsilon to pay all appropriate damages, including prejudgment and post-judgment interest, and including increased damages for its willful infringement;

C.  A judgment and order requiring Epsilon to pay all costs of this action, including all disbursements and attorney fees because this case is exceptional under 35 U.S.C. § 285;

D.  Permanent injunctions against Epsilon and its officers, agents, employees, attorneys, and all persons in active concert or participation with them, prohibiting infringement of the '764 patent, the '421 patent, and the '339 patent;

E.  Such other and further relief that this Court may deem just and equitable.

## Demand for a Jury Trial

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, BI Worldwide demands a trial by jury of all issues so triable.

OF COUNSEL:

Jennell C. Bilek
Nate D. Louwagie
CARLSON CASPERS VANDENBURGH
& LINDQUIST PA
225 S. Sixth Street, Suite 4200
Minneapolis, MN 55402
(612) 436-9600
jbilek@carlsoncaspers.com
nlouwagie@carlsoncaspers.com

Dated: January 8, 2025

/s/ Kelly E. Farnan
Kelly E. Farnan (#4395)
Sara M. Metzler (#6509)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com
metzler@rlf.com

*Attorneys for Plaintiff Schoeneckers, Inc. d/b/a BI Worldwide*